Filed 12/26/13  P. v. Keding CA1/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIRST APPELLATE DISTRICT

### DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>BRYAN ERNEST KEDING,<br><br>        Defendant and Appellant. | A136147<br><br>(Sonoma County<br>Super. Ct. No. SCR-600252) |

### INTRODUCTION

In 2011, a Sonoma County Sheriff's deputy stopped defendant Bryan Ernest Keding for speeding on the highway.  Upon contacting Keding, the officer smelled an odor of marijuana emanating from the car.  Defendant denied having any marijuana in the vehicle, but suggested the odor might be coming from his person, since he had smoked marijuana earlier (he had a medical marijuana recommendation).  The deputy testified he can distinguish between the smell of burned marijuana and the smell of unburned marijuana, and it was the smell of unburned marijuana emanating from the car.  A subsequent search of the vehicle yielded, among other things, a duffle bag containing 24 pounds of marijuana.  Defendant was convicted by his plea of possessing of more than 28.5 grams of marijuana, an offense that carries a maximum punishment of six months in the county jail and/or a $500 fine.  (Health & Saf. Code,[1] § 11357, subd. (c).)

---

[1] All further statutory references are to the Health and Safety Code unless otherwise indicated.

On appeal, defendant contends the search of his car was illegal. He maintains (1) there were no articulable facts to lead a reasonable officer to believe that he possessed more than an ounce of marijuana; (2) under California law, the possession and transportation of one ounce or less of marijuana is an infraction; and (3) the search for evidence of an infraction violates the Fourth Amendment because (a) an infraction is a civil matter, (b) defendant is a qualified medical marijuana patient, and (c) the automobile exception to the Fourth Amendment does not apply to searches for evidence of petty offenses. We disagree and affirm the judgment of conviction.

## STATEMENT OF THE CASE

A felony complaint charged defendant with possession of marijuana for sale, transportation of marijuana, driving on a suspended license, and speeding. (§§ 11359, 11360, subd. (a); Veh. Code, §§ 14601, subd. (a), 22349, subd. (a).) The preliminary hearing and defendant's motion to suppress evidence (Pen. Code, § 1538.5) were heard at the same time. The motion was denied and defendant was held to answer on both felonies and the speeding infraction. Following the filing of an information alleging the same charges, defendant renewed his motion to suppress in combination with a motion to set aside the information. (Pen. Code, §§ 1538.5, 995.) Both motions were denied. The information was amended to add a fourth count, possession of more than one ounce of marijuana (§ 11357, subd. (c)), to which defendant pleaded guilty in exchange for dismissal of the first three counts on the prosecution's motion. Imposition of sentence was suspended and defendant was placed on probation for 36 months. He timely appeals the superior court's order denying the motion to suppress. (Pen. Code, § 1538.5, subd. (m).)

## STATEMENT OF THE FACTS[2]

On the evening of April 10, 2011, Sonoma County Sheriff's Deputy Terry White observed a silver Honda on the freeway going 75 miles per hour in a 65-mile-per-hour zone. Deputy White initiated a traffic stop and contacted the driver, defendant Keding. Deputy White approached the vehicle on the passenger's side and talked to defendant through the opened window. He "could smell the odor of marijuana coming from the vehicle," so he asked if defendant had a medical marijuana recommendation for the use of marijuana. Defendant said yes. Asked if he had any marijuana with him, defendant said no, but offered that the odor detected by the deputy might be coming from his person, since he had smoked marijuana earlier. However, according to Deputy White, "burnt marijuana has a different odor than nonburnt marijuana. It wasn't what I was smelling."[3]

After defendant stepped out of the car at White's request, White searched it. In the cargo area of the vehicle White found, among other things, a duffle bag containing 24 one-pound bags of marijuana and one smaller bag of marijuana; and a black garbage bag containing three one-pound bags of marijuana and one smaller bag of marijuana.

## DISCUSSION

Defendant argues that the trial court erred in denying his motion to suppress because there was no articulable basis for a reasonable belief that defendant was in

---

[2] The statement of facts is drawn from the testimony adduced at the joint preliminary hearing/motion to suppress evidence. (See Pen. Code § 1538.5, subd. (i) ["If the motion was made at the preliminary hearing, unless otherwise agreed to by all parties, evidence presented at the special hearing shall be limited to the transcript of the preliminary hearing and to evidence that could not reasonably have been presented at the preliminary hearing, except that the people may recall witnesses who testified at the preliminary hearing."].)

[3] Deputy White, an 18-year law enforcement veteran, testified about his extensive training and experience related to the investigation of narcotics cases, including his attendance at various law enforcement training seminars dealing specifically with medical marijuana, and "hundreds of occasions" on which he had "seen, handled and smelled marijuana in different stages [of growth]." He also testified that his expertise in knowing burned marijuana from unburned marijuana came from his experience.

3

possession of *more than* one ounce of marijuana.  He hypothesizes that such a belief is critical to the legality of the search here because he is a "qualified patient" within the meaning of the Compassion Use Act of 1996 (CUA) (§ 11362.5) and the Medical Marijuana Program (MMP) (§ 11362.7 et seq.).  Boiled down to its essential parts, defendant's argument is that there was a "complete lack of articulable facts . . . to establish a reasonable suspicion" defendant possessed *more* than one ounce of marijuana during the traffic stop.  Since possession of *less* than one ounce of marijuana is not a crime but a civil matter in California, the search for evidence of an infraction is per se unreasonable under the Fourth Amendment, and the automobile exception to the Fourth Amendment's warrant requirement does not permit the warrantless search for evidence of a petty offense.  We disagree.  Before explaining our reasons for doing so, we set forth the standard of review which governs our analysis.

**A.  *Standard of Review***

In this case the magistrate who presided at the preliminary hearing is the finder of fact, and his or her factual resolutions are binding on this court as well as the trial court. (*People v. Trujillo* (1990) 217 Cal.App.3d 1219, 1223; § 1538.5, subd. (i).)  In reviewing the denial of defendant's motion to suppress evidence under Penal Code section 1538.5, we defer to the magistrate's express and implied factual findings if they are supported by substantial evidence (*People v. Woods* (1999) 21 Cal.4th 668, 673), and indulge all inferences in favor of the lower court's order.  (*People v. Brown* (1990) 216 Cal.App.3d 1442, 1447.)  We exercise independent judgment to determine whether, on the facts found by the fact finder, the search was lawful.  (*People v. Woods,* at pp. 673–674.)

**B.  *The CUA and MMP***

We first address defendant's underlying contention that defendant's status as a medical marijuana patient should have immunized him from Deputy White's investigatory scrutiny.   The CUA, enacted in 1996 by the initiative process as part of Proposition 215, provides in relevant part:  "Section 11357, relating to the possession of marijuana, and Section 11358, relating to the cultivation of marijuana, shall not apply to a patient . . . who possesses or cultivates marijuana for the personal medical purposes of the

patient upon the written or oral recommendation or approval of a physician."[4] (§ 11362.5, subd. (d).)

As our supreme court explained in *People v. Kelly* (2010) 47 Cal.4th 1008 (*Kelly*), "the CUA provides an affirmative defense to *prosecution* for the crimes of possession and cultivation. [Citations.] The CUA does not grant immunity from *arrest* for those crimes, however. So long as the authorities have probable cause to believe that possession or cultivation has occurred, law enforcement officers may arrest a person for either crime regardless of the arrestee's having a physician's recommendation or approval." (*Id*. at p. 1013; see also *People v. Mower* (2002) 28 Cal.4th 457, 467; *People v. Strasburg* (2007) 148 Cal.App.4th 1052, 1058; *Littlefield v. County of Humboldt* (2013) 218 Cal.App.4th 243, 250.)

In 2003, the Legislature enacted article 2.5 of division 10, chapter 6 of the Health and Safety Code, known as the Medical Marijuana Program. (§ 11362.7 et seq.) "At the heart of the MMP is a voluntary 'identification card' scheme that, unlike the CUA—which, as noted, provides only an *affirmative defense* to a charge of possession or cultivation—*provides protection against arrest* for those and related crimes. Under the MMP, a person who suffers from a 'serious medical condition,' . . . may register and receive an annually renewable identification card that, in turn, can be shown to a law enforcement officer who otherwise might arrest the program participant or his or her primary caregiver." (*Kelly, supra*, 47 Cal.4th at p. 1014, fns. omitted; § 11362.71.)

---

[4] Section 11362.5 also provides in relevant part that the purpose of the CUA is "[t]o ensure that seriously ill Californians have the right to obtain and use marijuana for medical purposes where that medical use is deemed appropriate and has been recommended by a physician who has determined that the person's health would benefit from the use of marijuana" and "[t]o ensure that patients . . . who obtain and use marijuana for medical purposes upon the recommendation of a physician are not subject to criminal prosecution or sanction. [¶] . . . [¶] . . . Nothing in this section shall be construed to supersede legislation prohibiting persons from engaging in conduct that endangers others, nor to condone the diversion of marijuana for nonmedical purposes." (*Id.*, subds. (b)(1)(A), (B) & (b)(2).)

Defendant maintains he comes within the "safe harbor provision" of the MMP because he has a medical marijuana recommendation and, as such, is a "qualified patient" within the meaning of the CUA and MMP.[5]  However, so far as this record shows, he did not possess an identification card.  Thus, his status as a "qualified patient" under the CUA and MMP did not immunize him from reasonable police investigations or searches. (*People v. Strasburg, supra*, 148 Cal.App.4th at p. 1058.)  "[T]he [CUA] provides a

---

[5]  "A 'qualified patient' is defined by the MMP as 'a person who is entitled to the protections of Section 11362.5 [the CUA], but who does not have an identification card issued pursuant to this article.'  (§ 11362.7, subd. (f).)" (*Kelly, supra*, 47 Cal.4th at p. 1016, fn. 7.)

The MMP's "safe harbor provision"—section 11362.77, subdivision (f)— authorizes possession of certain amounts of medical marijuana.  "It provides that a 'qualified patient or a person holding a valid identification card . . . may possess amounts of marijuana consistent with this article [that is, as provided in subdivisions (a)–(c) of section 11362.77.]' " (*Kelly, supra*, 47 Cal.4th at p. 1016.)  Qualified patients may possess "no more than eight ounces of dried marijuana."  (§ 11362.77, subd. (a).)

However, the CUA does not "specify an amount of marijuana that a patient may possess or cultivate; it states instead that the marijuana possessed or cultivated must be for the patient's '*personal medical purposes.*' [Citation.]  An early decision construed this provision of the CUA as establishing 'that the *quantity possessed* by the patient or the primary caregiver, and the form and manner in which it is possessed, *should be reasonably related to the patient's current medical needs.*' " (*Kelly, supra*, 47 Cal.4th at p. 1013, italics added by *Kelly*.)  *Kelly* found that in enacting quantitative limits on the amounts of marijuana qualified patients could possess or cultivate in section 11362.77, the Legislature impermissibly amended the CUA without voter approval.  (*Kelly*, at p. 1012.)  "By extending the reach of section 11362.77's quantity limitations beyond those persons who voluntarily register under the MMP and obtain an identification card that provides protection against arrest—and by additionally restricting the rights of all 'qualified patients' and 'primary caregivers' who fall under the CUA—the challenged language of section 11362.77 effectuates a change in the CUA that takes away from rights granted by the initiative statute."  (*Id.* at p. 1043.)

Nevertheless, the court invalidated the statute only insofar as it prevented a qualified patient from asserting, "as a defense in court, that he or she possessed or cultivated an amount of marijuana reasonably related to meet his or her current medical needs [citation] without reference to the specific quantitative limitations specified by the MMP."  (*Kelly, supra*, 47 Cal.4th at p. 1049.)  The court declined to sever section 11362.77 from the MMP or otherwise declare it void.  (*Kelly*, at p. 1049.)

limited immunity—not a shield from reasonable investigation.  An officer with probable cause to search is not prevented from doing so by someone presenting a medical marijuana card or a marijuana prescription."  (*Id.* at p. 1060.)

## C.  *An Infraction Is Not a Civil Matter*

Defendant's next contention—that possession of less than one ounce of marijuana is not a criminal offense, because it is an infraction—is also incorrect.  Pursuant to Penal Code section 16, an infraction *is* a crime or public offense.  A violation of section 11357, subdivision (c)—possession of less than one ounce of marijuana—is an infraction.  Therefore, it is a crime or public offense, albeit a minor one.  (See also Pen. Code §§ 17, 19.8.)  As defendant acknowledges, Penal Code section 1524, subdivision (a)(3) authorizes the issuance of a warrant upon a showing of probable cause "[w]hen the property or things are in the possession of any person with the intent to use it as a means of committing a public offense."  Defendant relies on cases describing infractions as noncriminal because "[p]roceedings on infractions are not attended by the same constitutional safeguards attending felony or misdemeanor prosecutions."  (*People v. Sava* (1987) 190 Cal.App.3d 935, 939 [rule forbidding successive prosecutions]; *People v. Battle* (1975) 50 Cal.App.3d Supp.1, 6 [rights to jury trial, appointed counsel].)  However, " 'cases are not authority for propositions not considered.' "  (*Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1160.)  Neither *Sava* nor *Battle* is authority for defendant's assertion that Penal Code section 1524, subdivision (a)(3) "does not apply to infractions because an infraction is neither a crime nor a public offense."

Nor is there any basis for defendant's assertion that an infraction, for the purposes of the Fourth Amendment, is a "civil matter."   "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."  (*Atwater v. Lago Vista* (2001) 532 U.S. 318, 354 [mandatory seat belt law].)  "Under *Atwater*, all that is needed to justify a custodial arrest is a showing of probable cause. . . . We must therefore conclude that there is nothing inherently unconstitutional about effecting a custodial arrest for a fine-only offense."  (*People v. McKay* (2002) 27 Cal.4th

601, 607 [riding a bicycle the wrong way on a residential street].) Likewise, under the Fourth Amendment, all that is needed to justify the search of an automobile properly stopped on a highway is probable cause to believe the automobile "contains contraband, evidence of a crime, or was itself an instrumentality of the commission of one." (*People v. Laursen* (1972) 8 Cal.3d 192, 201.) "In this class of cases, a search is not unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant has not actually been obtained." (*United States v. Ross* (1982) 456 U.S. 798, 809, fn. omitted.)

We concluded that neither defendant's status as a qualified patient under the CUA and MMP, or section 11357, subdivision (c)'s status as an infraction, provided any impediment to Deputy White's investigation into the origin of the unburned marijuana smell emanating from defendant's car. We therefore now turn to the question whether Deputy White had probable cause to search defendant's car for evidence of the unlawful possession of marijuana.

**D.** *Probable Cause: Defendant's Evasive Reply and the Odor of Unburned Marijuana*

Defendant argues probable cause was lacking here because Deputy White could not determine the quantity of marijuana from smell alone, and had no articulable basis for inferring that defendant was being untruthful when he denied possessing any marijuana. We disagree. Probable cause posits "a fair probability that contraband or evidence of a crime will be found in a particular place." (*Illinois v. Gates* (1983) 462 U.S. 213, 238.) "[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." (*Id.* at p. 243, fn. 13.) Deputy White testified that he smelled the odor of unburned marijuana through the opened car window. It was an odor with which he was very familiar, based on his extensive training and experience. Defendant's explanation for the odor—that he had been smoking marijuana earlier— contradicted the evidence under the deputy's nose. Under these circumstances the officer was entitled to infer that defendant's denial of marijuana possession was probably untrue, and that his admission to smoking marijuana earlier, even if true, was designed to deflect the deputy from searching for the source of the unburned marijuana smell coming from

8

the car.  The magistrate expressly credited Deputy White's testimony, and substantial evidence supports the inference that defendant's responses to White's inquiries were evasive.  Under the appropriate standard of review, we must defer to the magistrate's express and implied factual findings if they are supported by substantial evidence, and indulge all inferences in favor of the lower court's order.  (*People v. Woods, supra,* 21 Cal.4th at p. 673; *People v. Brown, supra,* 216 Cal.App.3d at p. 1447.)

The magistrate's findings support the conclusion that Deputy White had probable cause to search defendant's vehicle.  Case law establishes that the odor of unburned marijuana, alone or in combination with other circumstances, may justify the search of a car for marijuana.  (*People v. Cook* (1975) 13 Cal.3d 663, 667–669, overruled on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421; *United States v. Johns* (1985) 469 U.S. 478, 482; *People v. Strasburg, supra*, 148 Cal.App.4th at p. 1055.)  Here, the odor of unburned marijuana, coupled with defendant's evasive responses to the deputy's inquiries, provided probable cause for the search of the car for the source of the odor.  The motion to suppress was properly denied.

## DISPOSITION

The judgment is affirmed.

_____

Dondero, Acting P.J.

We concur:

_____

Banke, J.

_____

Becton, J.*

---

* Judge of the Contra Costa County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.